JOSEPH J. GILLOTTI ET AL. v. FOOD FAIR STORES OF CONN., INC., ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued April 5—decided May 23, 1961

*Frank J. Culhane,* with whom were *William D. Allen* and, on the brief, *Alfred Santaniello,* for the appellant (named defendant).

*Louis A. DeFabritis,* for the appellees (named plaintiff et al.) ; with him, on the brief, was *Thomas A. Keating,* for the appellees (plaintiffs City of Danbury et al.).

KING, J. The original plaintiffs were three residents and taxpayers of Danbury, each of whom holds a package store liquor permit covering premises in Danbury. Subsequently, the city of Danbury and three members of the standing committee on health, buildings and encroachments of the common council of Danbury were allowed to, and did, intervene and file a separate complaint. The relief sought in each complaint was an injunction forbidding the sale of liquor in the grocery store of the named defendant, hereinafter referred to as the defendant. The two actions were tried together and treated as one, and from a single judgment for the plaintiffs against the defendant it has appealed. It was the permit backer.

On October 13, 1950, a package store permit was issued to Harry G. Neff covering the sale of alcoholic liquor on premises at 50 Division Street in Danbury. These premises had, since 1939, been continuously used for the sale of alcoholic liquor. On November 2, 1950, Neff, with the approval of the liquor control commission, moved his package store directly across the street to 49 Division Street. On October 19, 1950, John R. Ward had applied for a grocery store beer permit for the premises at 50 Division Street which Neff was vacating. It was not issued until February 9, 1953, and then was continued until October 10, 1958, when it was canceled and a package store permit issued in its stead, pursuant to an application which had been filed on May 22, 1958.

The package store permit covering Neff's new location at 49 Division Street was renewed from year to year until March 14, 1957, at which time a package store permit for this location was issued to William G. Burnie with the defendant as backer.

This permit was renewed on March 14, 1958. Henry C. Barese was substituted for Burnie as permittee on April 1, 1958. Prior to May 21, 1958, the Tulip Realty Co. of Conn., Inc., hereinafter referred to as Tulip, acquired the premises at 49 Division Street together with three adjoining parcels of land, including the premises known as 51 and 53 Division Street. On May 21, 1958, Tulip demolished the building at 49 Division Street. A new, large building occupying parts of 49, 51 and 53 Division Street was erected, fronting on West Street. This building is ten feet behind the site of the demolished building at 49 Division Street. The rear portion, only, of the new building is on any portion of the lot on which the old building was situated. The new building has a floor area in excess of 25,000 square feet and is assessed for $186,000. A major portion of the new building is leased to the defendant. The old building was a two-story structure with an approximate area, on each floor, of 2270 square feet, and the defendant's former package store occupied less than one-half of the floor space of the first floor. The old building was last assessed for $6610. The package store permit covering the defendant's former store was surrendered on August 6, 1958, at which time the defendant applied for a grocery store beer permit with Barese as permittee. It was issued on October 21, 1958. While the application purported to seek a permit for 49 Division Street, the permit has in fact been used in the new building which covers parts of what was formerly 49, 51 and 53 Division Street.

Section 7 of the Danbury zoning ordinance (1929, as amended) allowed the continuance of a nonconforming use, the reconstruction and structural alteration of a building devoted to a nonconforming use,

and a change in the nonconforming use, if the cost of any structural alteration did not exceed 50 per cent of the assessed value of the building. No enlargement of the building could be made unless the use was changed to a conforming use. No nonconforming use could be extended so as to diminish the extent of a conforming use. Section 4A of the ordinance in substance prohibited the erection of any building, or the use of any premises, for a tavern, grill, hotel or package store within 1000 feet of any other premises so used. This provision, adopted in 1936, was expressly made not retroactive and was not to apply to existing buildings. Where, however, "an existing tavern, grill, hotel or package store use has been discontinued for a period of thirty . . . days, such use shall not be resumed except" as a conforming use.

In *Danbury* v. *Corbett,* 139 Conn. 379, 383, 94 A.2d 6, decided January 13, 1953, this court held that the definition of a package store as set forth in § 1 (y) of the Danbury zoning ordinance did not apply to a grocery store selling beer under a grocery store beer permit issued in 1950 under what is now General Statutes §§ 30-15 (c) (3) and 30-20 (c), and further held that, as a consequence, the 1000-foot restriction in § 4 A of the zoning ordinance did not apply to such an establishment. Before this decision, and effective March 9, 1951, § 1 (y) of the ordinance was amended so that the definition of a package store did include premises where beer was sold under a grocery store beer permit.

The court concluded that as a result of the change in definition of a package store in the ordinance the premises at 49, as well as those at 50, Division Street were nonconforming uses on February 9,

1953, because of their proximity to each other and that both thus became subject to the provisions of the ordinance regarding the continuance of a nonconforming use. The court further concluded that the surrender of the package store permit covering 49 Division Street on August 6, 1958, over two months after the demolition of the building at that location, constituted a discontinuance of the nonconforming use as of the date of demolition, May 21, 1958, thus leaving the use of the premises at 50 Division Street a conforming use, and that any subsequent use, as a package store, of the new building which covers parts of what was formerly 49, 51 and 53 Division Street would, since the new building is within 1000 feet of 50 Division Street, necessarily be a new nonconforming use and would, under the facts here, violate § 4 A of the zoning ordinance. On this theory the injunction issued.

The court correctly held that the defendant's operation of its store in the new building under a grocery store beer permit could not be considered a continuance of a nonconforming use, nor sustained as such a use.

The real claim of the defendant is that the sale of liquor by it is, and long has been, a conforming use, because the Ward permit, covering the premises at 50 Division Street, although fair on its face, was in fact illegal and void. From this, the defendant argues that the Ward outlet should be regarded as nonexistent, thus leaving the defendant's premises as a conforming use even though they are within 1000 feet of the Ward store.

The granting of the Ward permit by the liquor control commission in 1953 and the subsequent operation of the store at 50 Division Street constituted prima facie evidence that the operation

was not in violation of the zoning ordinance of Danbury or otherwise illegal. See *Cusano* v. *Dunn,* 137 Conn. 20, 24, 74 A.2d 477. While the Ward permit stood, the Ward store must be treated as a legally existent liquor outlet in determining the proximity of the defendant's premises to it. If the validity of the Ward permit was to be called in question, it would have to be done by a direct attack and in such a manner as to give Ward an opportunity to be heard, and as to bring about a determination binding upon him. See 30A Am. Jur. 441 § 393, 445 § 395. It does not appear that any direct attack has been made by anyone. The defendant had no standing in this proceeding collaterally to attack the validity of the Ward permit or the legality of the operation of his store under that permit.

Since the court should not have attempted collaterally to determine the legality of the Ward outlet in this proceeding, its refusal to conclude that the outlet was illegal was not erroneous. It necessarily follows that the court was correct in determining that the use by the defendant of its present premises for the sale of beer is forbidden by the zoning ordinance because of the proximity of those premises to the Ward outlet. Injunctive relief against the defendant's sale of liquor in its new store was properly granted, at least at the instance of the plaintiff city of Danbury.

There is no error.

In this opinion the other judges concurred.