R. FRANK TALARICO ET AL. *v.* GEORGE J. CONKLING,
COMMISSIONER OF TRANSPORTATION

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 4, 1974—decision released March 25, 1975

*Victor Feingold,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellant (defendant).

*John T. Cummiskey, Jr.,* for the appellees (plaintiffs).

LOISELLE, J.  The plaintiffs own a 1.1-acre parcel of land in Southbury which is improved by two separate commercial buildings.  One building, two stories in height, is located on the front portion of the lot near the highway; the other structure, one and one-half stories in height, is located in the rear of the lot.  The lot has a 200-foot frontage abutting routes 6 and 67.  The defendant commissioner made a determination in 1969 that a widening of route 6 would require the acquisition of .06 of an acre of the plaintiffs' land.  The result of such taking would reduce the setback of the plaintiffs' front building from twenty-five feet to fifteen feet from the highway line.  The Southbury zoning regulations explicitly require a minimum twenty-foot setback from the highway line to qualify a building for use in a business zone.

On April 2, 1970, the defendant commissioner, without permission and contrary to the wishes of the plaintiffs, filed an application with the Southbury zoning board of appeals for a variance from the twenty-foot setback requirement.  On July 7, 1970, the zoning board of appeals unanimously approved the application and, "pursuant to Sec. 48-24 of the 1969 Supplement to the General Statutes," granted a setback variance of five feet to become effective July 13, 1970.  The plaintiffs did not appeal the granting of the variance.  The property of the plaintiffs was condemned on February 5, 1971, and the plaintiffs appealed from the fixing of the damages.  The referee to whom the matter was assigned increased the assessment of damages, and from this judgment the defendant has appealed.

In his assessment, the referee considered as an element of damages that "[t]he reduction by five feet of the required front yard as a result of the taking together with the granted setback variance in the light of the existing circumstances creates a reasonable probability of rendering all or a part of the two-story front building nonconforming, which, if so, would subject it to the limitations of enlargement and casualty connected with nonconformities under the zoning regulations." The defendant has assigned as error[1] the court's including as an element of damages the probability that the plaintiffs' front building was rendered nonconforming by the issuance of the variance by the zoning board of appeals and by the subsequent taking which left a fifteen-foot setback from the street line.

At the trial on the issue of the assessment of damages, the plaintiffs claimed as a matter of law that since the required minimum front yard distance from the street line is twenty feet, the effect of the taking rendered the front building nonconforming and the effect of the variance was to allow only the continued use of the structure. The plaintiffs argued that the variance does not render the front building conforming in the sense that the setback variance would be equivalent to a zoning regulation to this effect for that property. They claimed that as the front building does not conform to the setback requirements of the ordinance, the enlargement and casualty provisions of the ordinance pertaining to nonconforming structures would be applicable to the structure in question, thereby decreasing its value on the open market. On the other hand, the

---

[1] The defendant's claim that he did not make application for the variance under General Statutes § 48-24 need not be considered as it has no effect on the disposition of this action.

defendant claimed that the variance rendered the structure a conforming use and, therefore, the enlargement and casualty provisions of the ordinance pertaining to nonconforming structures would not apply.

As the town of Southbury, its zoning commission, and its board of appeals were not parties to the action, the court refused to make a determination of the legal claims advanced by the parties but only considered whether there was a reasonable probability that the front building would be held to be a nonconforming structure and thereby affect the value of the plaintiffs' remaining property. The trial court was correct in not making an academic ruling which would not in any way bind the town of Southbury. *Gillotti* v. *Food Fair Stores of Connecticut, Inc.,* 148 Conn. 412, 418, 171 A.2d 415; *Brennan* v. *Russell,* 133 Conn. 442, 445, 52 A.2d 308; *Ackerman* v. *Union & New Haven Trust Co.,* 91 Conn. 500, 508, 100 A. 22. The court was also correct in considering the effect of zoning regulations as a factor affecting value; *Budney* v. *Ives,* 156 Conn. 83, 88, 239 A.2d 482; *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 102, 230 A.2d 9; and in including the reasonable probability of a zoning classification with regard to nonconformity within that consideration. See *Budney* v. *Ives,* supra. It was necessary, therefore, for the trial court to make a decision as to the reasonable probability of a legal construction regarding the granted variance which any willing buyer and seller would consider in assessing the value of the plaintiffs' land.

General Statutes § 8-6 does not allow a board of appeals when granting a variance to make a new ordinance for a particular property; the statute only

allows the board to vary the application of the existing ordinance in enumerated instances. Thus, a variance does not create a change of zone for a particular parcel; *Plumb* v. *Board of Zoning Appeals,* 141 Conn. 595, 599, 108 A.2d 899; but authorizes the landowner to use his property in a manner prohibited by the regulations. *Carlson* v. *Zoning Board of Appeals,* 158 Conn. 86, 90, 255 A.2d 841; *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 636, 109 A.2d 256.

The defendant claims that the effect of the variance granted in this instance was to make the front building on the plaintiffs' property remaining after condemnation a "permitted structure" rather than a nonconforming one.[2] "In the determination whether a particular use is permitted or nonconforming, the question is one of expressed intent as stated in the zoning regulations, which are basically legislative enactments, and such intent must be found from the intent expressed in the regulations construed as a whole." *Melody* v. *Zoning Board of Appeals,* 158 Conn. 516, 519, 264 A.2d 572; *Garbaty* v. *Norwalk Jewish Center, Inc.,* 148 Conn. 376, 381–82, 171 A.2d 197.

Under the general provisions of the regulations, section 1.1, "Jurisdiction," reads as follows:

---

[2] In *Industrial Lessors, Inc.* v. *Garfield,* 119 N.J. Super. 181, 290 A.2d 737, cert. denied, 61 N.J. 160, 293 A.2d 390, relied upon by the defendant, a distinction is made between a variance and a nonconforming use. In allowing a reconstruction of a building destroyed by fire which had been built by virtue of a variance previously granted, it is stated that the use of the structure allowed by variance became a conforming use. It is noted, however, that the purpose of the variance was still existing and that the court was careful to limit the reconstruction to a duplication of the structure in existence pursuant to the variance and not to allow enlargement.

"Within the Town of Southbury, no land, building or other structure shall be used and no building or other structure shall be constructed, reconstructed, enlarged, extended, moved or structurally altered except in conformity with these Regulations." The section relating to nonconformity in the general provisions reads as follows: "Nonconformity: any use, building or other structure or lot, which existed lawfully, whether by variance or otherwise, on the date these Regulations or any amendment hereto became effective, and fails to conform to one or more of the provisions of these Regulations or such amendment hereto, may be continued subject to the provisions and limitations of Section 11." Section 11, entitled "Nonconformity," contains the usual provisions that nonconformities are to be changed to conformities as quickly as "the fair interests of the parties permit," that no enlargements are permitted, and that in the event of casualty in excess of 80 percent of assessed value, the use must return to compliance with the provisions of the ordinance. The definition of nonconformity in this section is substantially the same as that in the general provisions.[3] This definition of nonconformity is not the definition usually found in zoning regulations in that it states that a nonconformity may be any use, building or other structure or lot which existed by virtue of a variance at the time the regulations were adopted or of any amendment thereto. This definition by itself is confusing as ordinarily there would be no variance granted prior to the adoption

[3] "[Southbury Zoning Regs.] Sec. 11.2 *Definitions:* A nonconforming use, building or other structure, or lot is one which existed lawfully, whether by variance or otherwise, on the date these Regulations or any amendment hereto became effective, and which fails to conform to one or more of the provisions of these Regulations or such amendment hereto."

of zoning regulations. The Southbury zoning regulations were adopted April 28, 1966. It is judicially noted that at some time prior to this date there were zoning regulations for the town of Southbury. They were construed in part in *Hinman* v. *Planning & Zoning Commission,* 26 Conn. Sup. 125, 214 A.2d 131, which was decided in 1965. When it is considered that valid zoning regulations existed prior to the adoption of the present regulations this provision takes on meaning. The defendant claims that the word "variance" as used in the definition relating to nonconformity in the zoning regulations is merely descriptive of the legal status of a use or building existing on the effective date of the regulations or any amendment thereto. Even if this is so, the specific inclusion of "variance" in this definition indicates an intent that under the Southbury regulations the status of a use or building which is acquired by the granting of a variance is not insulated from the general requirements of conformity as expressed in § 1.1 or from the conditions to which nonconformities are subject under § 11. When the purpose and effect of the granted variance are considered in light of the intent expressed in the Southbury regulations under the general provisions and under § 11, entitled "Nonconformity"; *Melody* v. *Zoning Board of Appeals,* supra; it cannot be said that the court was in error in considering that "there existed a high and reasonable probability that the Southbury Zoning Board of Appeals would consider or would reasonably hold and find that the two-story building located near the new highway together with the granted variance would be legally nonconforming within the meaning of the zoning regulations, or at least insofar as the offending front five feet of the building are involved." Since

the effect of a reasonably probable construction of a zoning ordinance would have an effect upon the value of premises on the open market, the court was not in error in considering this in its valuation of the premises of the plaintiffs. See *Budney* v. *Ives,* supra.

There is no error.

In this opinion the other judges concurred.