[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the Planning and Zoning Commission of the Town of Lisbon (Commission) and Paul Cote, Acting Zoning Enforcement Officer (ZEO) of such town, from the action of the Zoning Board of Appeals (ZBA) of the Town of Lisbon in granting a variance to James Roethel, also a defendant in this action.
For reasons hereinafter stated, the decision of the ZBA to grant the variance is reversed.
Plaintiffs have appealed under the provisions of General Statutes § 8-8 (b) which provides in part that: "Any person aggrieved by any decision of a board may take an appeal to the Superior Court." To establish the aggrievement required by statute, so as to be entitled to appeal a zoning board's decision, a party must allege facts which, if proven, would constitute aggrievement as a matter of law and prove the truth of those factual allegations. Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184 (1996).
 I.
Plaintiffs have the burden of proof to establish aggrievement. WhitneyTheater Company v. Zoning Board of Appeals, 150 Conn. 285, 287 (1963). Aggrievement in this case is contested. Defendants have briefed the issue claiming that the plaintiffs are not aggrieved and have no standing to prosecute this appeal from the granting of a variance.
The ZBA argues that neither the Commission nor the ZEO is aggrieved under the circumstances of this case. The ZBA relies to a large extent on language in the treatise, R. Fuller, 9 Connecticut Practice Series, Land Use and Practice (1993), § 32.4, p. 531, to the effect that while the Commission and the ZEO may appeal from matters involving cease and desist orders which they have issued, they lack authority to appeal from the granting of a variance.
It is found that the plaintiffs are aggrieved because of the provisions of General Statutes § 8-8 (1). General Statutes § 8-8 (1) includes within the definition of "aggrieved persons, any officer, department, board or bureau of the municipality charged with the enforcement of any order, requirement or decision of the board." Section8-8 (2) includes a planning and zoning commission within the definition of "[b]oard." In paragraph 9 of the complaint, plaintiffs allege that CT Page 7478 they are aggrieved by the Commission's decision in that "(a) the plaintiffs are charged with the enforcement of any order, requirement or decision of the board pursuant to sec. 8-8 (1) of the General Statutes."
Section 8-1 of the General Statutes authorizes any municipality to establish a zoning commission and authorizes such commission to exercise the powers set forth in chapter 124 of the General Statutes. The zoning commission established for a town is authorized by § 8-2 of the General Statutes to enact regulations in accordance with and for the purposes set forth in such section. General Statutes § 8-3 (e) states that the zoning commission shall provide for the manner in which zoning regulations shall be enforced. Municipalities are authorized by General Statutes § 8-4 (a) to designate its zoning commission to be a combined planning and zoning commission. The Town of Lisbon has established a Planning and Zoning Commission which has promulgated zoning regulations in compliance with General Statutes § 8-2.
The essential purpose of the ZBA, insofar as its power to grant variances is concerned, is to furnish some elasticity in the application of regulatory measures so that they do not operate in an arbitrary, unreasonable or confiscatory manner, or in any manner which would be unconstitutional. Astarita v. Liquor Control Commission, 165 Conn. 185,189 (1973). The statutory and regulatory scheme which establishes planning and zoning naturally entails a certain amount of conflict between the Commission and the ZEO on one side and the ZBA on the other. The Commission has enacted zoning regulations in accordance with the provisions of General Statutes § 8-2. The object of zoning is to adopt means to regulate property uses in conformance with a comprehensive plan in a manner to advance the public welfare. George LaCava Sons,Inc. v. Town Plan Zoning, 154 Conn. 309, 311 (1966). A variance authorizes a landowner to use his property in a manner prohibited by the zoning regulations. Talarico v. Conklin, 168 Conn. 194, 198 (1975).
Under the provisions of § 9 of the zoning regulations, the Commission is required to review and consider applications for special permits. The Commission is required to determine the impact of the proposed use on the site and the surrounding areas and may require modifications or additions to the plan admitted as a condition of approval. Such conditions should be aimed at assuring that the proposed activity will be in harmony with the general character of the area and not result in any significant impact on health, safety or welfare of the town.
The action of the ZBA, which is the subject of this appeal, was the granting of a variance from compliance with § 9.8.5 of the regulations involving access to flag lots. Flag lots are permitted under CT Page 7479 the regulations by special permit. The variance would then place the Commission in a position in which it would be required to consider a special permit application which did not comply with the regulations.
The Commission has also enacted subdivision regulations under the provisions of General Statutes § 8-25. Section 8-25 requires that the subdivision regulations provide for the public safety and requires the Commission to consider safe intersections and that they be arranged and be of such width as to provide adequate and a convenient system for effective traffic needs.
A map accompanying Mr. Roethel's application is entitled "Resubdivision Plan Boundary Survey Map." It is logical to conclude that if Mr. Roethel desires to make use of the flag lots as shown on the plan, after acquiring the variance, he will then submit the plan to the Commission for its approval. The Commission and the ZEO might then be required, because of the action of the ZBA, to give a stamp of approval to an application which is contrary to the regulations. In Tyler v. Board ofZoning Appeals, 145 Conn. 655 (1958), the Supreme Court determined that a commission was not aggrieved where under the applicable regulations it had no function in the enforcement of the zoning regulations. The Court, however, went on to state at page 658:
 We have recognized that there is a public interest involved in many appeals which should be represented before the court. In most such situations, the board or officer having the responsibility of making the decision is entrusted with the duty of protecting that public interest. Maltbie, Conn. App. Proc., p. 311. Accordingly, we held in Rommell v. Walsh, 127 Conn. 16, 23, 15 A.2d 6, that a zoning board of appeals may be made a party defendant in an appeal taken from an order it has made and, where the trial court has overruled the board's decision, may prosecute an appeal to this court to protect the public interest involved. The decision recognized that, apart from the provision in § 379d for action by an enforcement officer to protect the public interest, there may be occasion for a board whose ruling is in question to intervene, itself, to protect the public interest. The municipality concerned is always entitled to represent such interests by participating as a party to an appeal. (Citations omitted.)
Another case in point is Dupuis v. Zoning Board of Appeals,152 Conn. 305, [152 Conn. 308], (1965). This was an appeal CT Page 7480 by the building inspector from the granting of a variance to allow an addition to a nonconforming building. The court found that the building inspector was the proper officer to enforce the zoning regulations and that he was authorized to take the appeal under § 8-8. It was determined that it would be incumbent upon the building inspector to issue a building permit if the variance was allowed to stand. This is similar to the present situation where the Commission might be required to approve Roethel's subdivision and special permit applications which would not in accordance with the zoning regulations. Id. at 310-311.
In Bouvier v. Zoning Board of Appeals, 28 Conn. Sup. 278 (1969), the Appellate Court determined that the ZEO and the planning zoning commission were aggrieved parties since the commission, acting through its agent, the ZEO, had a duty to see to it that no land should be used unless it was in accordance with the regulations.
Relying on the above case law and the plain language of General Statutes § 8-8 (1), it must be concluded that the Commission and the ZEO are aggrieved persons and have standing to prosecute this appeal. It should be noted that this decision does not allow the Commission to veto the action of the Zoning Board of Appeals in granting the variance. This decision merely recognizes that the Commission and its officer, the ZEO[1], have standing to present the issue to the court.
 II.
The first issue which must be addressed concerns the authority of the ZBA to grant variances.[2] Section 2.4 of the regulations authorizes the granting of variances using the following language.
 Variances. Any person whose application for a zoning permit is denied because the application is not consistent with the requirements of these Regulations, may apply to the Zoning Board of Appeals for a variance, except that no variance may be granted that would result in the establishment of a use not otherwise permitted in the district.
The plain language of § 2.4 would appear to limit the authority of the ZBA to grant variances to those situations where an application for a zoning permit has been denied. There is nothing to indicate that Mr. Roethel took the procedural step of applying for a zoning permit as § 2.4 appears to require. This presents the question as to whether or not the ZBA had authority to act on the variance application in the absence of the prior application for a zoning permit and denial by the CT Page 7481 Commission.
General Statutes § 8-5 provides in part that "[i]n each municipality having a zoning commission there shall be a zoning board of appeals . . ." The powers and duties of a ZBA are spelled out in General Statutes § 8-6. This section grants to the ZBA authority to determine and vary the application of zoning regulations. "An examination of the provisions of Chapter 124 of the General Statutes, especially § 8-2
. . . and 8-6, concerning the powers of boards of appeal, can lead only to the conclusion that the power to vary the ordinance to accommodate practical difficulties and do substantial justice lies exclusively in the board of appeals." Langer v. Planning Zoning Commission, 163 Conn. 453,457 (1972).
"In connection with zoning ordinances, it is a cardinal principle of construction that provisions and amendments must be enacted pursuant to the zoning enabling statute . . . once the board of appeals is provided for in the zoning ordinance, its powers stem directly from the statute . . . and its powers are not subject to restriction by provisions contained in the ordinance or amendments thereto." (Citations omitted.) Langer v.Planning Zoning Commission, supra, 163 Conn. 457-58.
The subject matter jurisdiction of the ZBA is derived from General Statutes § 8-6. Such jurisdiction, the authority to grant variances, may not be restricted by the local regulations. It must therefore be concluded that § 2.4 of the zoning regulations is invalid to the extent that it purports to limit the ZBA's authority to consider variance requests to cases in which the applicant has applied for and been denied a zoning permit. Here, the ZBA properly considered the variance application.
 III.
In considering the issues raised in this appeal, the scope of judicial review is limited. Horn v. Zoning Board of Appeals, 18 Conn. App. 674,676 (1989). The authority of the court is limited by § 8-8 to a review of the proceedings before the ZBA. The function of the court in such a review is to determine whether the board acted fairly or on valid reasons with the proper motives. Willard v. Zoning Board of Appeals,152 Conn. 247, 248-49 (1964). The court is limited to determining whether the record reasonably supports the conclusions reached by the board.Burnam v. Planning and Zoning Commission, 189 Conn. 261, 265 (1983). The court cannot substitute its discretion for the liberal discretion confirmed by the legislature on the ZBA. The court is limited to granting relief only when it can be shown that the board acted arbitrarily or illegally and consequently has abused its statutory authority. Gordon v.CT Page 7482Zoning Board, 145 Conn. 597, 604 (1958). The burden rests with the plaintiff to prove the impropriety of the board's actions. Burnam, supra, 189 Conn. 266.
It is not the function of the court to rehear the matter or question wisdom of the defendant board in taking the action which it did. The court is limited to determining whether or not the board's action can be supported under the law.
Where, as here, the ZBA failed to state the reasons for its actions on the record, the court must search the record to attempt to find some basis for the action taken. Grillo v. Zoning Board of Appeals,206 Conn. 362, 369 (1986).
Here, Mr. Roethel requested that the ZBA grant a variance from the strict application of § 9.8.5 of the zoning regulations. A variance constitutes permission for a party to use their property in a manner otherwise prohibited by the zoning regulations. For these reasons, the granting of a variance is generally reserved for unusual or exceptional circumstances. Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206
(1995).
Defendant board derives its authority to vary the application of the zoning regulations from the provisions of General Statutes § 8-6
(3). The statute authorizes the board:
 [T]o determine and vary the application of the zoning by laws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such by laws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed.
Variances are, in a sense, the "antithesis of zoning." Zoning is regulation by the municipality of the use of land within the community, and the buildings and structures which may be located thereon, in CT Page 7483 accordance with a general plan. The General Statutes authorize such regulation of land and the use of buildings. Such regulations, however, must be applied uniformly throughout each district. A variance disrupts the conformity and constitutes permission to act in a manner that is otherwise prohibited by the zoning regulations., Simko v. Ervin,234 Conn. 498, 505-506 (1995).
The two basic conditions which must be met for the granting of a variance are (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Grillo v.Zoning Board of Appeals, 206 Conn. 362, 368 (1988).
An applicant for a variance must show that, because of some peculiar characteristic of its property, the strict application of the zoning regulation produces an unusual hardship as opposed to the general import which the regulation has on other properties in the zone. Dolan v. ZoningBoard of Appeals, 156 Conn. 426, 429 (1968).
The board is under no duty to extricate an applicant a self-created hardship. Pollard v. Zoning Board of Appeals, supra, 44.
A mere economic hardship is insufficient to justify granting a variance. Krejpcio v. Zoning Board of Appeals, 152 Conn. 657, 662
(1965).
 IV.
As previously noted, the variance application involved what the zoning regulations defined as a flag lot.
Section 7.2.2 of the regulations provides that flag lots are real lots having less than the required street frontage and may be permitted by the Commission as a special permit under the provisions of § 9. Section 9.8, entitled "Flag Lots," states that in order to provide for the development of property remote from existing roads, the Commission may permit street frontage requirements to be reduced for such rear lots, provided that the other conditions of the regulations are met. Section 9.8.1 requires that a safe and convenient driveway for access to the main part of the flag lot from an existing street be at least 25 feet in width. Section 9.8.5 requires that such access strips shall not be located closer than 300 feet to similar access strips on the same side of the street.
The record indicates that on May 20, 1999, defendant James Roethel CT Page 7484 applied to the Zoning Board of Appeals for a variance from § 9.8.5 of the regulations for land located on the south side of Newent Road (Route 138). The land in question was located in an R-40 zone. On the application, it states that strict application of the regulations would produce undue hardship because "it would require use of another access strip through a large wetland area and over a town drainage easement. (See map.)" The application also indicated that the hardship created was unique and not shared by other properties in the neighborhood because "they have sufficient frontage." It was also claimed that the variance would not change the character of the neighborhood. A map entitled "resubdivision plan" was filed with the variance application. The land described on the map has an area of 7.7/8 acres with about 200 feet of frontage on Newent Road (Rt. 138) and about 50 feet on Ross Hill Road. The plan shows three interior flag lots. The purpose of the application was to vary the requirements of § 9.8.5 that access strips not be located closer than 300 feet to similar access strips on the same side of the street to allow two contiguous 25-foot access strips across the 50-foot frontage on Ross Hill Road Extension.
The record indicates that the land fronting the highway was sold off prior to the enactment of zoning regulations with a 50.32 foot strip retained for access to the interior land from Ross Hill Road Ext. As noted, the land also has about 200 feet frontage on Newent Road (Rt. 138).
The map shows a band of wetlands which stretches from the northwest corner of the property at Newent Road (Rt. 138) across its easterly boundary to the southeasterly corner. Any access road would of necessity have to cross this wetland area. The map also shows a 15-foot drainage easement in favor of the Town of Lisbon in the northeast area of the 7.7/8 acres.
It was Roethel's intention to create three flag lots from the 7.7/8 acres for the benefit of three of his children. The variance would allow two abutting 25-foot access strips from Ross Hill Road Ext. to flag lots 2 and 3 as shown on the plan. Although it is not shown on the plan, a 25-foot access strip could be provided to flag lot 1 from Newent Road (Rt. 138).
Under a strict application of the regulations, only two access roads, 25 feet in width and 300 feet apart, could be created. Since a single access road was required for each flag lot, Roethel would be limited to two flag lots under the regulations.
At the public hearing, there was very little evidence presented on the issue of hardship. The applicant's representative, Mr. Sullivan, CT Page 7485 presented the case in support of the variance which would allow two abutting access strips through the 50-foot strip. He explained that the use of another access strip would mean having to access the flag lots through a large wetland area and over a town drainage easement. It is difficult to comprehend this argument in light of the map and other evidence in the record which failed to show where this third access strip could be located.
Although it would be improper to engage in speculation or conjecture, it is possible that Mr. Sullivan was describing a possible access through land not a part of the 7.7/8 acres but shown on the map as now or formerly of James T. and Katherine E. Roethel. This tract adjoins the 7.7/8 acre parcel at its northeast corner. There is nothing in the record to indicate that this land would be available for an access strip.
If this land were available for an access strip, there is nothing to indicate that it could not be laid out. Such access strip would have to cross the same band of wetlands that would be involved in the other access strips. The drainage easement might be a factor, but there is nothing to indicate that it would prevent the construction of the access. If access could be provided through this property, it would be in conformance with § 9.8.5 of the regulations and no hardship would exist.
For a variance to be granted, it must be shown that it will not affect substantially the comprehensive zoning plan. Grillo v. Zoning Board ofAppeals, supra, 206 Conn. 368. The comprehensive zoning plan consists of the zoning regulations together with the zoning map established pursuant to these regulations. Burnham v. Planning Zoning Commission, supra,189 Conn. 267. The comprehensive plan for the Town of Lisbon provides for interior flag lots with 25-foot access strips. The plan requires the intersection of these access strips with the public highway to be at least 300 feet apart. The variance would allow access strips to be contiguous and would constitute a substantial deviation from the comprehensive plan.
Before a variance could be granted, the applicant must establish that adherence to the strict letter of the zoning regulation would cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Grillo v. Zoning Board of Appeals, supra,206 Conn. 368. It was incumbent upon the applicant to show that because of some peculiar characteristic of the property, the strict application of the zoning regulations would produce an unusual hardship as opposed to the general import which the regulations have on other properties in the zone. Dolan v. Zoning Board of Appeals, supra, 156 Conn. 429. Here, there is no substantial evidence in the record of any peculiar characteristic CT Page 7486 of the property which would produce an unusual hardship as differentiated from other properties in the zone. There is nothing to indicate an unusual hardship.
It was argued by the applicant, and there was some discussion by members of the ZBA, to the effect that the interior 7.7/8 acre parcel was created prior to the enactment of the zoning regulations. The argument here is that the enactment of the zoning regulations created the problem. A hardship which originates in the zoning regulations and arises directly from the application of the regulations to the circumstances and conditions beyond control of the party involved would justify the granting of a variance. Whittaker v. Zoning Board of Appeals,179 Conn. 650, 658 (1980). This, however, is not the case here. Roethel has ample access to the property through the 50-foot strip from Ross Hill Road Ext. and across the 200-foot frontage on Newent Road (Rt. 138). Mr. Roethel can provide two interior flag lots with access strips which conform to the regulations. He would prefer to develop three flag lots. It is, however, not a proper function of the ZBA to vary the application of the zoning regulations merely because such regulations hinder the landowner from putting them to a more profitable use. Dolan v. ZoningBoard of Appeals, supra, 156 Conn. 430.
The granting of variances must be reserved for unusual or exceptional circumstances. Ward v. Zoning Board of Appeals, 153 Conn. 141, 145
(1965). A hardship which is self created is never a proper grounds for the granting of a variance. See Aithers v. Zoning Board of Appeals,18 Conn. App. 195, 206 (1989), where the Appellate Court determined that a property owner's desire to subdivide his property into two lots was a self-created hardship and not sufficient reasons for the granting of a variance.
Considering all of the evidence and the record and properly before the court, it cannot be found that there was sufficient evidence in the record which would support the granting of a variance.
Accordingly, judgment is entered for the plaintiffs and the decision of the ZBA appealed from is reversed.
 Joseph J. Purtill Judge Trial Referee