[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the Planning Zoning Commission of the Town of Lisbon (Commission) and Rex Champany, ZEO of such town, from the action CT Page 12505 of the Zoning Board of Appeals (ZBA) of the Town of Lisbon in granting a variance to Albert G. Gosselin, Jr., Gran-Lee, LLC and Lisbon Land Associates, LLC (applicants). The ZBA and the applicants are defendants in this action.
For reasons hereinafter stated, the decision of the ZBA to grant the variance is reversed.
Plaintiffs have appealed under the provisions of General Statutes § 8-8(b), which provides in part that: "Any person aggrieved by any decision of a board may take an appeal to the superior court." To establish the aggrievement required by statute so as to be entitled to appeal a zoning board's decision, a party must allege facts which, if proven, would constitute aggrievement as a matter of law and prove the truth of those factual allegations. Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184 (1996).
Plaintiff's have the burden of proof to establish aggrievement. WhitneyTheater Company v. Zoning Board of Appeals, 150 Conn. 285, 287 (1963). Aggrievement in this case is contested. The attorney for the ZBA has briefed the issue claiming that the plaintiffs are not aggrieved and have no standing to prosecute this appeal from the granting of a variance. The attorney for the applicants has failed to file a brief.
The first issue raised on the issue of aggrievement arises out of the fact that plaintiff Rex Champany was no longer serving as the ZEO on the date of trial. At trial, an oral motion was made to substitute Paul Cote as plaintiff in lieu of Mr. Champany. Mr. Cote testified that he had succeeded Champany as zoning enforcement officer and building official and had been serving in such capacity for one and a-half years. The attorney for the ZBA did not object to the substitution, but raised the issue as to whether or not Mr. Cote could be considered an aggrieved party in this case. The attorney for the ZBA correctly pointed out that a party's aggrieved status must continue from the time the appeal is commenced to the date upon which it is heard. Goldfeld v. Planning Zoning Commission, 3 Conn. App. 172 (1985). Although the attorney has correctly stated the law, the issue here is not whether Mr. Cote or Mr. Champany is aggrieved. The issue is whether or not the person holding the office of ZEO is an aggrieved party in this case.
The ZBA argues that neither the Commission nor the ZEO is aggrieved under the circumstances of this case. The ZBA relies to a large extent on language in the treatise, R. Fuller, 9 Connecticut Practice Series, Land Use and Practice (1993), § 32.4, page 531, to the effect that while the Commission and then ZEO may appeal from matters involving cease and desist orders which they have issued, they lack the general authority to CT Page 12506 appeal from the granting of a variance.
It is found that the plaintiffs are aggrieved because of the provisions of General Statutes § 8-8(1). General Statutes § 8-8(1) includes within the definition of "aggrieved persons," "any officer, department, board or bureau of the municipality charged with the enforcement of any order, requirement or decision of the board." Section 8-8(2) includes a planning and zoning commission within the definition of "[b]oard." In paragraph 9 of the complaint, plaintiffs allege that they are aggrieved by the Commission's decision in that "(a) the plaintiffs are charged with the enforcement of any order, requirement or decision of the board pursuant to § 8-8(1) of the General Statutes; (b) the decision was not in harmony with the general purpose and intent of the zoning regulations and not in conformity with the comprehensive plan of zoning in the Town of Lebanon." Paragraph 10 alleges that in granting the application for variances, the ZBA acted illegally and in abuse of the discretion vested in it in five specific ways.
Although it has been disputed by the ZBA, the authority of the Commission and the ZEO to have standing to appeal the decision of the ZBA was made more clear as a result of an extensive revision of § 8-8 by the 1989 legislature. Tondro, Connecticut Land Use Regulations, 2d Ed., Chapter 8, § B.d., page 556.
Prior to the enactment of Public Act 89-356, General Statutes §8-8(a) provided that:
"Any office, department, board or bureau of any municipality charged with enforcement of any order, requirement or decision of said board may appeal to the Superior Court. The statute, however, did not specifically describe such board as aggrieved. The following language used in Public Act 89-356 clearly indicates the legislative intent that the Board be considered an aggrieved person.
(a) AS USED IN THIS SECTION:
 (1) "AGGRIEVED PERSON" MEANS A PERSON AGGRIEVED BY A DECISION OF A BOARD AND INCLUDES ANY OFFICER, DEPARTMENT, BOARD OR BUREAU OF THE MUNICIPALITY CHARGED WITH ENFORCEMENT OF ANY ORDER, REQUIREMENT OR DECISION OF THE BOARD . . .
 (2) "BOARD" MEANS A MUNICIPAL ZONING COMMISSION, PLANNING COMMISSION, COMBINED PLANNING AND ZONING COMMISSION, ZONING BOARD OF APPEALS OR OTHER BOARD OR COMMISSION THE DECISION OF WHICH MAY BE APPEALED CT Page 12507 PURSUANT TO THIS SECTION.
Section 8-1 of the General Statutes authorizes any municipality to establish a zoning commission and authorizes such commission to exercise the powers set forth in chapter 124 of the General Statutes. The zoning commission established for a town is authorized by § 8-2 of the General Statutes to enact regulations in accordance with and for the purposes set forth in such section. General Statutes § 8-3(e) states that the zoning commission shall provide for the manner in which zoning regulations shall be enforced. Municipalities are authorized by General Statutes § 8-4(a) to designate its zoning commission to be a combined planning and zoning commission. The Town of Lisbon has established a Planning and Zoning Commission which has promulgated zoning regulations in compliance with General Statutes § 8-2. The ZEO and the Commission, defined as a board under the statute, are charged with the enforcement of these regulations.
The essential purpose of the ZBA, insofar as its power to grant variances is concerned, is to furnish some elasticity in the application of regulatory measures so that they do not operate in an arbitrary, unreasonable or confiscatory manner, or in any manner which would be unconstitutional. Astarita v. Liquor Control Commission, 165 Conn. 185,189 (1973). The statutory and regulatory scheme which establishes planning and zoning naturally entails a certain amount of conflict between the Commission and the ZEO on one side and the ZBA on the other. The Commission has enacted zoning regulations in accordance with the provisions of General Statutes § 8-2. The object of zoning is to adopt means to regulate property uses in conformance with a comprehensive plan in a manner to advance the public welfare. George LaCava Sons, Inc. v.Town Plan Zoning, 154 Conn. 309, 311 (1966). A variance authorizes a land owner to use his property in a manner prohibited by the zoning regulations. Talarico v. Conklin, 168 Conn. 194, 198 (1975).
Relying on case law, which includes Dupuis v. Zoning Boards of Appeal,152 Conn. 305 (1965); Tyler v. Board of Zoning Appeals, 145 Conn. 655,658 (1958); and Bouvier v. Zoning Board of Appeals, 28 Conn. Sup. 278
(1969), and the plain language of General Statutes § 8-8(1), it must be concluded that the Commission and the ZEO are aggrieved persons and have standing to prosecute this appeal. It should be noted that this decision does not allow the Commission to veto the action of the Zoning Board of Appeals in granting the variance. This decision merely recognizes that the Commission and its officer, the ZEO, have standing to present the issue to the court.
Although the zoning regulations do not specifically set forth the authority of the ZBA to grant variances, it must be concluded that the CT Page 12508 ZBA does, in fact, have the powers and duties spelled out in General Statutes § 8-6. Langer v. Planning Zoning Commission, 163 Conn. 453
(1972).
In considering the issues raised in this appeal, the scope of judicial review is limited. Horn v. Zoning Board of Appeals, 18 Conn. App. 674,676 (1989). The authority of the court is limited by § 8-8 to a review of the proceedings before the ZBA. The function of the court in such a review is to determine whether the board acted fairly or on valid reasons with the proper motives. Willard v. Zoning Board of Appeals,152 Conn. 247, 248-49 (1964). The court is limited to determining whether the record reasonably supports the conclusions reached by the board.Burnham v. Planning and Zoning Commission, 189 Conn. 261, 265 (1983). The court cannot substitute its discretion for the liberal discretion confirmed by the legislature on the ZBA. The court is limited to granting relief only when it can be shown that the board acted arbitrarily or illegally and consequently has abused its statutory authority. Gordon v.Zoning Board, 145 Conn. 597, 604 (1958). The burden rests with the plaintiff to prove the impropriety of the board's actions. Burnham,
supra, 189 Conn. 266.
It is not the function of the court to rehear the matter or question wisdom of the defendant board in taking the action which it did. The court is limited to determining whether or not the board's action can be supported under the law.
Where, as here, the ZBA failed to state the reasons for its actions on the record, the court must search the record to attempt to find some basis for the action taken. Grillo v. Zoning Board of Appeals,206 Conn. 362, 369 (1986).
Here, the applicants requested that the ZBA grant a variance from the strict application of certain sections of the zoning regulations. A variance constitutes permission for a party to use their property in a manner otherwise prohibited by the zoning regulations. For these reasons, the granting of a variance is generally reserved for unusual or exceptional circumstances. Bloom v. Zoning Board of Appeals, 233 Conn. 198,206 (1995).
Defendant board derives its authority to vary the application of the zoning regulations from the provisions of General Statutes § 8-6(3). The statute authorizes the board:
 [T]o determine and vary the application of the zoning by laws, ordinances or regulations in harmony with their general purpose and intent and with due CT Page 12509 consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such by laws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed.
Variances are, in a sense, the "antithesis of zoning." Zoning is regulation by the municipality of the use of land within the community, and the buildings and structures which may be located thereon, in accordance with a general plan. The General Statutes authorize such regulation of land and the use of buildings. Such regulations, however, must be applied uniformly throughout each district. A variance disrupts the conformity and constitutes permission to act in a manner that is otherwise prohibited by the zoning regulations., Simko v. Ervin,234 Conn. 498, 505-506 (1995).
The two basic conditions which must be met for the granting of a variance are (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Grillo v.Zoning Board of Appeals, 206 Conn. 362, 368 (1988).
An applicant for a variance must show that, because of some peculiar characteristic of its property, the strict application of the zoning regulation produces an unusual hardship as opposed to the general import which the regulation has on other properties in the zone. Dolan v. ZoningBoard of Appeals, 156 Conn. 426, 429 (1968).
A mere economic hardship is insufficient to justify granting a variance. Kreipcio v. Zoning Board of Appeals, 152 Conn. 657, 662
(1965).
The record indicates that the property in question was laid out before the effective date of the zoning regulations. The land is in a B1 Business District. Section 5.1 of the regulations lists certain uses permitted in the B1 district "provided the dimensional requirements of § 7 are met." The applicant desires to conduct a donut shop, a CT Page 12510 permitted use, on the premises and on or about April 28, 1998, applied for a variance from the strict application of § 7.4.1, 7.4.2 and 11.1 of the regulations.
In the B1 zone, § 7.4 requires a 40-foot front yard and 20-foot side and rear yards. Section 7.4.1 provides that "accessory building and uses shall not be located within the required front yard." Section 7.4.2 states that "required side and rear yards for accessory building and use shall be half that required or principal building and use." Section 11.1 requires that accessory parking spaces shall be provided on the same lot as the use to which they are accessory. This section also requires that such parking spaces shall be in the same ownership as the use to which they are accessory.
The variance was to allow the accessory use of parking, internal drive and accessory drive with a zero setback in the front and side yards. It would also allow that parking be allowed on an adjacent lot not in the same ownership, but with a contract between the owners.
The hardship claimed for the narrowness of the lot which was 100 feet wide and about 945 feet in depth.
For a variance to be granted, it must be shown that it will not affect substantially the comprehensive zoning plan. Grillo v. Zoning Boards ofAppeals, supra, 206 Conn. 368. The comprehensive zoning plan consists of the zoning regulations together with the zoning map established pursuant to such regulations. Burnham v. Planning Zoning Commission, supra,189 Conn. 267. The court must examine the record to determine whether or not the granting of the variances would substantially affect the comprehensive plan.
The attorney for the ZBA argues that the variances will not permit a use adverse to the comprehensive plan. The record indicates that the property is in a commercial zone and the proposed use would be allowable under the regulations and consistent with other businesses in the vicinity. It was stated by the proponents at the hearing that the variances will not change the general business character of the area. At the hearing, it was also pointed out that some of the other businesses in the area use double lots. Some allow drive-thru uses and side yard parking. There was nothing in the record to indicate the legal basis of the parking at the other businesses or whether the double lots were in single ownership as required by the regulations.
General Statutes § 8.2 authorizes zoning commissions to regulate the size of yards, the percentage of lot area that may be occupied and the location of buildings all in accordance with a comprehensive plan. In CT Page 12511 accordance with this statute, zoning regulations usually contain provisions concerning setback, side yard, and rear yard construction and uses. The statute mandates that local regulations be designed to lessen congestion in the streets, prevent overcrowding of land and conserve the values of buildings and encourage the most appropriate use of land throughout the municipality. In accordance with the statute, zoning regulations universally contain setback, side yard and rear yard provisions. Sections 7.4.1 and 7.4.2 of the Lisbon regulations provide such requirements. Zoning regulations, such as these, prevent the worst aspect of commercial strip operations with attendant traffic problems.
Although § 11.1 of the zoning regulations does not involve setback or side yard regulations, it does involve parking and has a direct relation to lot area devoted to commercial use and traffic. Considering the record as a whole, it is difficult to conclude that the variances granted here would not affect the comprehensive plan. It is the second requirement of General Statutes § 8-6(3), however, that presents the greatest impediment to sustaining the decision of the ZBA.
Before a variance may be granted, it must be found that because of some peculiar characteristic of the property, the strict application of the zoning regulations produces an unusual hardship as opposed to the general import which the regulations have on other properties in the zone. Dolanv. Zoning Board of Appeals, supra, 156 Conn. 429.
At the public hearing, there was little evidence of hardship. In the application for variances and at the hearing, it was represented that the lot was too narrow for the contemplated use. Considering the dimensions of the lot, however, there was nothing in the record to indicate that it could not be used for a commercial purpose. The general import of the applicant's presentation was that it would be much more convenient if the variances were granted.
It is argued that Stillman v. Zoning Board of Appeals, 25 Conn. App. 631
(1991), should control and that the law concerning variances should not be too restrictive. In Stillman, unlike the present case, the property owner sought a modest variance of the regulations to permit an addition to an existing house. The variance was granted and a neighbor appealed. The court sustained the appeal on the basis of Wells v. Zoning Board ofAppeals, 180 Conn. 193, 196-429 (1980); and Johnnycake, Inc. v. ZoningBoard of Appeals, 180 Conn. 296, 301 (1980). This decision was reversed by the Appellate Court on the grounds that the test used by the trial court was too restrictive. In reversing the trial court, the Appellate Court determined that because of unique conditions, the setback regulations were exceptionally burdensome, id. 636-637. The situation inStillman differs from that in the present case. In Stillman, the request CT Page 12512 only involved a few feet. Here, the application was for "zero setback in the front and side yard" with parking on an adjacent lot. Although the variance would make it much more convenient for the applicants to conduct a business on the premises, there is nothing in the record to show that adherence to the regulations would be exceptionally burdensome.
In Bloom v. ZBA, supra, 233 Conn. 198, decided well after Stillman, the Supreme Court did not use the "exceptionally burdensome" standard. At page 210, the court stated that "financial considerations are relevant only if the application of the regulation or ordinance practically destroys the value of the property for any use to which it may be put and the regulation ordinance as applied to the subject property bears little relationship to the purposes of the zoning plan." Neither financial loss nor the potential for financial gain is the proper basis for granting a variance. Garibaldi v. Zoning Board of Appeals, 163 Conn. 235, 239
(1972).
The granting of variances must be reserved for unusual or exceptional circumstances. Ward v. Zoning Board of Appeals, 153 Conn. 141, 145
(1965). Considering all of the evidence in the record and properly before the Court, it cannot be found that there was sufficient evidence in the record which would support a finding of exceptional hardship as required by law and that the granting of the variance was illegal.
Accordingly, judgment is entered sustaining the appeal and the decision of the ZBA appealed from is reversed.
 Joseph J. Purtill Judge Trial Referee