**James WILTZIUS, Plaintiff**

v.

**TOWN OF NEW MILFORD, Kathleen Castagnetta, Joanne Chapin, Janice Dobson, Don Bertola, Bill Butler, Patricia Hembrook, Marty Monteiro, Marcella Martin, Valerie Wilson, Defendant.**

**Civil Action No. 3:05–CV–661(JCH).**

United States District Court,
D. Connecticut.

Sept. 18, 2006.

Loredana Nesci, Burbank, CA, Robert A. Fuller, Wilton, CT, for Plaintiff.

Robert Avery Rhodes, Halloran & Sage, Westport, CT, for Defendant.

## RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. No. 66]

HALL, District Judge.

The plaintiff, James Wiltzius, brings this action against the defendants, the Town of New Milford ("New Milford"), Kathleen Castagnetta, Joanne Chapin, Janice Dobson, Don Bertola, Bill Butler, Patricia Hembrook, Marty Monteiro, Marcella Martin, and Valerie Wilson ("defendants"), alleging federal constitutional claims of a taking and violations of substantive due process under sections 1983 and 1988 of Title 42 of the United States Code, public and private nuisance, negligence, misrepresentation, and violation of section 52–557n of the Connecticut General Statutes. Wiltzius is suing all of the defendants in their individual and official capacities for compensatory and punitive damages. This action arises from variances that New Milford's Zoning Board of Appeals ("the Board") granted to the owners of a trailer park called Candle Hill Mobile Home Park (the "Park"), which Park abuts Wiltzius' property.

The defendants bring this Motion to Dismiss (Doc. No. 66) under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state any claims upon which relief can be granted. They argue that Wiltzius' suit is not ripe for federal review because he failed to exhaust available administrative and state court remedies, that the allegations in the Amended Complaint are insufficient to support a takings or due process claim, that the individually named defendants are entitled to qualified immunity under state and federal law, that New Milford is entitled to immunity under state law for the claim of misrepresentation and under federal law for the actions of the

Board in granting the variance, and that the defendants have not created a public or private nuisance.

The jurisdiction of this court over Wiltzius' federal law claims allegedly arises under sections 1331 and 1343(a) of Title 28 of the United States Code. The supplemental jurisdiction of this court over Wiltzius' state law claims allegedly arises under section 1367(a) of Title 28 of the United States Code. For the following reasons, the defendants' motion is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

Wiltzius is a citizen of Connecticut, who resides on property he owns at 14 Sherman Road in New Milford. Wiltzius has lived at this residence since May 1999. New Milford is a municipality created and existing as a political subdivision of Connecticut. Castagnetta was the Zoning Enforcement Officer of New Milford at all times relevant to this complaint. Chapin and Dobson were Chairpersons of the Board. Bertola was a Vice Chairperson for the Board. Butler, Hembrook, Monteiro, and Martin were all members of the Board, and Wilson was the Board's secretary.

Garden Homes Management Company ("Garden Homes") and Sixth Garden Park Limited Partnership ("Sixth Garden"), who are not parties to this suit, own and/or manage Candle Hill Mobile Home Park and two additional parcels of land. Established sometime in the 1950's, the Park is located on Sherman Road in New Milford, and its approximately sixty mobile homes are immediately adjacent to Wiltzius' land. The other two parcels of land are located

---

1. The record set forth in this section does not represent the entirety of factual allegations alleged in Wiltzius' sixty-six page Amended Complaint. Instead, the court only includes the facts necessary to communicate the essence of Wiltzius' claims and decide the issues raised by the Motion to Dismiss.

on Sherman Road and on Candlewood Mountain Road. All three properties are located in areas that the New Milford Zoning Regulations (the "Regulations") designate as single family residential zones. In these family residential zones, the Regulations prohibit the use of mobile homes for human occupancy. The Park, however, predates the current Regulations and, as such, is allowed as a nonconforming use.

On July 11, Garden Homes and/or Sixth Garden submitted three applications to the Board for variances from section 160–030(1) of the Regulations.[2] The applications sought to allow replacement of mobile homes at 18 Tallow Lane, 17 Victory Lane and 4 Wicker Lane with new and larger mobile homes. On July 22, Garden Homes and/or Sixth Garden sent Castagnetta a letter stating that the variance sought was to perpetuate a nonconforming use. Subsequently, on October 17, 2004, the Board granted Garden Homes and/or Sixth Garden a variance, permitting them to enlarge all existing mobile homes in the Park with new models.

Castagnetta issued zoning permits authorizing Garden Homes and/or Sixth Garden to remove and replace the mobile homes at 4 Wicker Lane, 18 Tallow Lane and 17 Victory Lane on October 27, 2003. Around February 10, 2004, Wiltzius noticed that water was draining onto his property from work being done on the mobile homes. Two weeks later, on February 25, 2004, Castagnetta issued two more zoning permits for Garden Homes to remove and replace nonconforming mobile homes at 15 Duncan Lane and 16 Tallow Lane. According to the complaint, the Park is and has always been without a storm drainage system or adequate waste disposal systems. In addition, conditions in the Park allegedly violated both state Public Health and Safety Codes and Department of Environment Protection orders.

On March 17, 2004, Wiltzius attended a public hearing held by the Board in an attempt to learn more about the construction work damaging his property. There, Wiltzius discovered that the Board had granted variances to Garden Homes and/or Sixth Garden for the mobile homes. Wiltzius explained to the Board at the meeting that the Park caused damage to his property before the variances were granted, that the new work on the mobile homes would exacerbate this damage, and that the damage occurred because the Park had inadequate water drainage. Wiltzius went on to explain to the Board that the drainage problem would worsen if not addressed in future work done on the site. After Wiltzius finished, unspecified members of the Board told him that they would "fix" Wiltzius' problems. Compl. at ¶ 51. Ultimately, however, the Board did nothing to address his concerns.

Due to the Board's inaction, Wiltzius filed appeals with the Board on April 5, 2004, seeking to rescind the variances and the permits Castagnetta issued in reliance on the variances. These appeals triggered an automatic stay of all actions in the proceeding pursuant to section 8–7 of the Connecticut General Statutes. On April 26, 2004, the Board sustained Wiltzius' appeal and rescinded the variances it granted to Garden Homes and/or Sixth Garden. The rescission became final on May 24, 2004. Based on this reversal, the Board also repealed, on July 21, 2004, the permits Castagnetta issued based on the variance.

---

**2.** Section 160–30(1) of the New Milford Zoning Regulations provides that: "a structure, the use of which does not conform to the use regulations for the district in which it is situated, shall not be enlarged or extended unless the use therein is changed to a conforming use."

No party has appealed the Board's April 26, 2004 decision.

During the pendency of the stay pursuant to section 8–7, Wiltzius alleges that the defendants allowed Garden Homes and/or Sixth Garden to remove the existing mobile homes from 4 Wicker Lane, 18 Tallow Lane, 17 Victory Lane, 15 Duncan Lane and 16 Tallow Lane, and that they allowed Garden Homes and/or Sixth Garden to install new septic systems and initiate additional alterations in the trailers' infrastructure. Most importantly, Garden Homes and/or Sixth Gardens, with the defendants' consent, began replacing the mobile homes with new and larger trailer units.

Attempting to halt any continued construction on units in the Park, Wiltzius applied for a temporary injunction in the Superior Court of the Judicial District of Litchfield on May 17, 2004. The purpose of the injunction was to enjoin Garden Homes and/or Sixth Garden from applying for any additional variances or zoning permits to replace other units in the Park until the Board ruled on his appeal. The court granted Wiltzius a partial temporary injunction on May 24, 2004. *Wiltzius v. Garden Homes Mgmt. Corp.*, 2004 WL 1245954 (Conn.Super. May 24, 2004). The court's order permitted Garden Homes to complete work on and sell the properties at 4 Wicker Lane, 18 Tallow Lane, 16 Tallow Lane, and 17 Victory Lane. *Wiltzius v. Garden Homes Mgmt. Corp.* 2004 WL 1245954 at \*2. The court further ruled that Garden Homes could complete the septic system for 15 Duncan Lane, but it enjoined Garden Homes from replacing the structure. *Id.* Lastly, the court enjoined Garden Homes from replacing any other units. *Id.*

Around June 11, 2004, Garden Homes and/or Sixth Garden applied for and received a certificate of zoning compliance from the Board for the unit at 16 Tallow Lane. At some point after this issuance, but before July 26, 2004, Wiltzius appealed the Board's decision to grant a certificate of zoning compliance. On July 26, 2004, and then again on September 22, 2004, the Board conducted public hearings on Wiltzius' appeal. The Board denied Wiltzius' appeal on November 17, 2004. Following the Board's denial, Wiltzius filed two appeals with the Connecticut Superior Court against the Town, Garden Homes, and Sixth Garden.

## II. LEGAL STANDARDS

 Under Fed.R.Civ.P 12(b)(1), the court dismisses a complaint for lack of subject matter jurisdiction when it lacks constitutional authority to adjudicate the suit. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). Because ripeness concerns whether a complaint presents a "case or controversy" upon which a federal court can exercise its Article III powers, it is an appropriate matter to consider on a motion to dismiss for lack of subject matter jurisdiction.[3] *Auerbach v. Board of Educ. of the Harborfields,* 136 F.3d 104, 108 (2d Cir.1998). In assessing a motion to dismiss for lack of subject matter jurisdiction, the court "accept[s] as true all material factual allegations in the complaint," *Shipping Fin. Serv. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Howev-

---

**3.** Although the defendants have moved to dismiss based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, both the defendants and Wiltzius address the ripeness of Wiltzius' takings claims in their briefs. For the reasons stated above, this court finds it appropri-

ate to address the ripeness question under Rule 12(b)(1) of the Federal Rules of Civil Procedure. This court will treat the rest of the Motion to Dismiss as one made pursuant to Rule 12(b)(6).

er, the court refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Id.* (citing *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. *Makarova,* 201 F.3d at 113; see also *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996); *In re Joint E. & So. Dist. Asbestos Litig.,* 14 F.3d 726, 730 (2d Cir.1993). Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000).

A motion to dismiss filed pursuant to Rule 12(b)(6) can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir. 1999). In considering such a motion, the court accepts the factual allegations alleged in the complaint as true and draws all inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). In addition, Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

"In considering a motion to dismiss ... a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference ... [and review all allegations] in the light most favorable to the non-moving party." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

## III. DISCUSSION

### A. Ripeness

Counts Two, Four, Six, Eight, and Fourteen of the Amended Complaint allege that the acts and omissions of the defendants amounted to a Fifth Amendment taking of Wiltzius' property by impairing the use and enjoyment of his property. The defendants allegedly effected this taking by enabling Garden Homes and/or Sixth Garden to cause significant harm to Wiltzius' property through the construction and maintenance of the new mobile homes. According to Wiltzius, this harm includes: 1) cracking the foundation of his garage; 2) separating the blocks of his garage; 3) eroding the soil and overall environment of his septic system's leech field; 4) washing waste and debris on to his property; 5) forming a trench across his property due to water concentration; 6) damaging his driveway; 7) making the soil on his property unsanitary and unusable; 8) sustaining water damage inside his home; and 9) creating a hazardous living environment for his family.

In their Motion to Dismiss, the defendants argue that Wiltzius' claim is not ripe for federal review under the two-pronged ripeness test the Supreme Court set out in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). As to the first prong, the defendants assert

that, because Wiltzius has four pending appeals before the Connecticut Superior Court,[4] there is no final administrative decision concerning the property at issue. On the second prong, according to the defendants, Wiltzius' takings claim is not ripe because he has yet to seek just compensation under Connecticut law.

Wiltzius counters that he has obtained a final administrative decision from the Board as to the property in question and that his appeals before the Superior Court are inapposite. Further, he argues that he should not be forced to pursue just compensation under state law in state court because this process would not encompass all of the factual allegations he wishes to assert. Wiltzius also argues that this court should overturn *Williamson County's* requirement that a plaintiff alleging a Fifth Amendment taking go through the state system before obtaining federal relief.

■ In *Williamson County*, the Supreme Court held that a Fifth Amendment takings claim was not ripe until the plaintiff had satisfied two requirements. First, the plaintiff has to obtain a final decision regarding the application of the zoning ordinance to the property in question from the government entity charged with implementing the regulations. *Williamson County*, 473 U.S. at 186, 105 S.Ct. 3108 (the "finality requirement"). Second, the plaintiff has to utilize the state's "reasonable, certain, and adequate" procedures for obtaining just compensation. *Id.* at 194, 105 S.Ct. 3108; see also *Southview Associates, Ltd. v. Bongartz*, 980 F.2d 84, 95 (2d Cir.1992) (the "exhaustion" requirement).

■ As to the first requirement of the *Williamson County* ripeness test, Wiltzius has obtained a final agency decision from the Board, notwithstanding his four pending administrative appeals in the state court system.[5] Connecticut law charges zoning boards of appeal with the authority to render final decisions as to the application of local zoning law to particular properties. *See Port Clinton Assocs. v. Bd. of Selectmen*, 217 Conn. 588, 606–07, 587 A.2d 126 (1991) ("[I]n many instances, a final decision by the initial decisionmaker really means a decision by the zoning board of appeals.") (citation omitted). In addition, *Williamson County's* final deci-

---

4. Wiltzius allegedly filed these appeals after exhausting his administrative appeals with Board. The appeals are: 1) *Wiltzius v. Garden Homes Mgmt. Corp.*, CV 04–0092934–S, filed on April 16, 2004 against Sixth Garden and nine private parties and concerns a private zoning enforcement action; 2) *Wiltzius v. Town of New Milford Zoning Board of Appeals*, filed on September 8, 2004 against the Board, Sixth Garden, and Garden Homes and concerns the legality of four new trailers in the Park; 3) *Wiltzius v. Town of New Milford Zoning Board of Appeals*, CV 05–4001552–S, filed on January 20, 2005 against the Board, Sixth Garden, and Garden Homes and concerns the legality of three new trailers in the Park; and 4) *Wiltzius v. Town of New Milford Zoning Board of Appeals*, filed on January 20, 2005 against the Board, Sixth Garden, and Garden Homes and concerns the legality of three new trailers in the Park.

5. On February 10, 2006, after the parties submitted their briefs on this Motion to Dismiss, the Connecticut Superior Court decided Wiltzius' administrative appeals concerning the Board's issuance of permits or certificates of compliance for units in the Park. *Wiltzius v. Zoning Board of Appeals of the Town of New Milford*, 2006 WL 463380 (Conn.Super. Feb.10, 2006). The parties informed the court at oral argument that they have applied for and been granted the right to appeal to the Connecticut Appellate Court. The court does not address the preclusive effects of the Superior Court's decision or the propriety of abstention given the pending state court proceedings; the parties have not briefed these issues. Both parties are free to raise these issues in subsequent motions.

sion prong does not require a takings plaintiff to resort to "clearly remedial" procedures, or those that merely serve to review the agency's decisions. *William-son County,* 473 U.S. at 193, 105 S.Ct. 3108; *see also Murphy v. New Milford Zoning Commission,* 402 F.3d 342, 349 (2d Cir.2005); *Cumberland Farms, Inc. v. Groton,* 247 Conn. 196, 204–05, 719 A.2d 465 (1998). Connecticut law is clear that administrative appeals to the Superior Court are purely remedial and, thus, not required before an agency decision is final. *Groton,* 247 Conn. at 205, 719 A.2d 465. The Board's rulings with respect to Wiltzius' appeals, then, must be considered final agency decisions within the meaning of *Williamson County.* Therefore, this court finds that Wiltzius has satisfied Williamson County's final agency decision prong.

■■■■ Wiltzius has not, however, fulfilled *Williamson County's* second requirement, because he has not ripened his claim through resort to Connecticut's process for obtaining just compensation. Though *Williamson County* generally requires that a federal takings claimant pursue reasonable, certain, and adequate provisions for securing compensation, 473 U.S. at 194, 105 S.Ct. 3108, the Second Circuit has subsequently held that a plaintiff must pursue a state court remedy "even where it 'remains unsure and undeveloped.'" *Villager Pond, Inc. v. Darien,* 56 F.3d 375, 380 (2d Cir.1995) (quoting *Southview Assocs.,* 980 F.2d at 99). Connecticut's Constitution provides that "[t]he property of no person shall be taken for public use, without just compensation therefor." Conn. Const. Art. I, § 11. Given this provision, the Second Circuit requires a plaintiff like Wiltzius to first test his claims for just compensation under the state constitution in state court. *See id.* ("[A]lthough no Connecticut case has been cited wherein compensation was provided for a

taking like the one alleged here, Villager Pond is still required to look to the state for compensation before its takings claim will lie.")

Wiltzius next asserts that, to the extent that *Williamson County's* second prong requires him to proceed initially in the courts of Connecticut, this element of the Supreme Court's holding in *Williamson County* is mistaken and should be reconsidered. Wiltzius is correct that four members of the Supreme Court recently expressed a willingness to take such an action. *See San Remo Hotel, L.P. v. City and County of San Francisco,* 545 U.S. 323, 125 S.Ct. 2491, 2507–10, 162 L.Ed.2d 315 (2005) (Rehnquist, J. concurring). However, *Williamson County* remains the law of the land. *See id.* at 2504 (majority opinion) (finding no fault with *Williamson County* ripeness requirement even if it serves to prevent most Fifth Amendment takings claims from reaching federal court). In addition, because the Second Circuit's decision in *Villager Pond* is directly on point to the facts of the present case, this court is obligated to follow it. Under this clear precedent, until Wiltzius pursues his taking claim in state court, it is unripe for federal review. Thus, his takings claims in Counts Two, Four, Six, Eight must be dismissed.

### B. Qualified Immunity

Counts One, Three, Five, and Seven of Wiltzius' Amended Complaint allege that Castagnetta and various members of the Board deprived him of substantive due process under the Fourteenth Amendment of the United States Constitution. The defendants allegedly perpetrated these violations by improperly granting variances for property located in the Candle Hill Mobile Home Park and permitting construction on the Park that subsequently damaged Wiltzius' property. In opposing

these counts, the individual defendants urge that they are entitled to qualified immunity because they did not violate any clearly established rights of the defendant or, in the alternative, the actions of the Board members and Castagnetta were objectively reasonable. As this court agrees that the substantive due process rights claimed by the plaintiff are not clearly established, it grants the individual defendants qualified immunity on these claims.

■■■ Generally, qualified immunity insulates government officials from personal liability when they perform discretionary duties pursuant to their official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The threshold question in determining whether a government actor's actions warrant qualified immunity is "whether the plaintiff's version of the facts show[s] the officer's conduct violated a constitutional right." *Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir.2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If, after construing the parties' submissions in favor of the plaintiff, the court concludes that the defendant did not violate any of the plaintiff's constitutional or statutory rights, the inquiry ends and the relevant counts are dismissed. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. But, if "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* If the right was clearly established, government officials are entitled to qualified immunity "only if he can show that, viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreason-

ably in light of the clearly established law." *Demoret*, 451 F.3d at 148 (citing *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir.2004)).

■■■ The first argument Wiltzius presses is that this court need not even conduct a qualified immunity analysis because the duties of the Board as they pertain to nonconforming uses are ministerial, not discretionary. Wiltzius primarily relies on the narrow language of New Milford's Zoning Regulations, which states that "a [nonconforming] structure . . . shall not be enlarged or extended unless the use therein is changed to a conforming use." New Milford Zoning Regulations § 160–030(1). In Wiltzius' view, this regulation's command so limits the Board's decision making authority that its actions concerning nonconforming uses should be considered ministerial. Since qualified immunity only applies to the discretionary functions of officials, Wiltzius's argument would necessarily preclude a finding of qualified immunity by this court.

■■■ A precise definition of the terms "ministerial" and "discretionary" is elusive. Indeed, the Second Circuit has openly questioned whether the distinction between ministerial and discretionary functions retains any validity. *Varrone v. Bilotti*, 123 F.3d 75, 82 (2d Cir.1997) (citing *Coleman v. Frantz*, 754 F.2d 719, 727 (7th Cir.1985), which noted the difficulty of applying the ministerial-discretionary distinction and argued that the distinction itself does "little to forward the purposes of immunity."). Significant guidance can be gleaned from the Supreme Court, which has stated that "a law that fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused." *Davis v. Scherer*, 468 U.S. 183, 196, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). From the description in *Davis*, the

narrowness of the ministerial exception to qualified immunity is readily apparent. *See Gagne v. City of Galveston,* 805 F.2d 558, 559 (5th Cir.1986) (concluding that the ministerial duty exception to qualified immunity is extremely narrow). With these considerations in mind, this court concludes that, however narrowly circumscribed the Board's discretion may be in determining what it means to enlarge or extend nonconforming structures, its duties in this area remain discretionary for qualified immunity purposes. *See Larsen v. Senate of the Commonwealth of Pennsylvania,* 154 F.3d 82, 87 n. 5 (3d Cir.1998) ("[O]fficials must make discretionary determinations even in the course of applying facially clear provisions.").

Having determined that the qualified immunity analysis properly applies in this case, the court must next tackle the threshold question of whether, as set forth in the complaint, the Board members violated Wiltzius' constitutional rights. On this point, the court concludes that Wiltzius has adequately alleged a substantive due process violation.

 Second Circuit precedent instructs that a plaintiff alleging that a state official has deprived him of a property interest in violation of substantive due process does not state a claim for relief unless he can demonstrate a "clear entitlement" to the interest asserted under state law. *Natale v. Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999) (citing *Walz v. Smithtown,* 46 F.3d 162, 167–68 (2d Cir.1995)). Normally, a clear entitlement exists where, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Walz,* 46 F.3d at 168 (quoting *Yale Auto Parts v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985)). Courts determine the likelihood of an agency decision by assessing the amount of discretion the zoning laws grant to a particular agency. Thus, a clear entitlement may arise where a zoning board's discretion is "so narrowly circumscribed as to virtually assure conferral of the benefit" in question. *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 918 (2d Cir.1989).

Wiltzius asserts a constitutionally protected property interest in having New Milford properly enforcing its zoning regulations with respect to parcels of land adjacent to his own. Therefore, Wiltzius must establish, at a minimum, that the Board's discretion to grant and deny variances with respect to nonconforming uses is narrowly circumscribed. The Board members argue that the Second Circuit has declined to recognize that such a claim actually involves a constitutional right. *See Gagliardi v. Pawling,* 18 F.3d 188, 191–93 (2d Cir.1994). Like Wiltzius, the plaintiff in *Gagliardi* argued that the municipality failed to properly enforce its zoning laws on an adjacent piece of property. *Id.* at 191. According to the plaintiff in *Gagliardi,* the zoning board failed to prevent the owners of the adjacent property from "causing excessive noise, storing hazardous material and failing to provide adequate drainage of the land." *Id.* at 192. Despite the apparent damage the zoning board's inaction wrought on the plaintiff's property, the Second Circuit held that the board's broad authority over the enforcement of the zoning regulations prevented the plaintiff from stating a constitutionally cognizable interest in that enforcement. *Id.*

While New Milford's zoning regulations prohibit the enlargement or extension of nonconforming uses, the Regulations do not specify what it means to enlarge or extend a nonconforming use. *See* New Milford Zoning Regulations § 160–030(1). This omission, according to the defendants, appears to allow the Board to exercise a measure of discretion in determining the

meaning of these terms. According to the defendants, the existence of such discretion by a local zoning board, therefore, prohibits Wiltzius from successfully asserting a constitutionally protected interest in the Board's enforcement of the Regulations. *See Gagliardi*, 18 F.3d at 192 ("Where a local regulator has discretion with regard to the benefit at issue, there normally is no entitled to that benefit."); *see also Walz*, 46 F.3d at 168 ("an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised") (quoting *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 918 (2d Cir.1989)).

Wiltzius first attempts to avoid the impact of *Gagliardi* by arguing that the case does not apply here because the Board's actions caused a "direct adverse physical impact" to his property. Reply to Motion to Dismiss at 18 (Doc. No. 78). This court cannot discern why such a distinction is relevant to the present inquiry, and Wiltzius cites to no authority to argue otherwise.

■■■ However, this court does find that the Board in the present case had considerably less discretion to perpetuate nonconforming uses than the zoning board in *Gagliardi* had to issue general variances. *Compare* Zoning Board of Appeals Code of the Village of Pawling, § 98–59(C)(3) (stating that the board has power to approve variances that "will not be contrary to the public interest and where, owing to exceptional and extraordinary circumstances, there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this chapter") *with* Zoning Regulations of New Milford, § 160–030(1) (stating that "a [nonconforming] structure ... *shall not be* enlarged or extended unless the use therein is changed to a conforming use") (emphasis added). And, though the Board arguably has a measure of leeway in defining the terms

"enlarge" and "extend", this measure appears exceedingly small against the backdrop of Connecticut law. *See, e.g., Wells v. Zoning Board of Appeals*, 180 Conn. 193, 198, 429 A.2d 467 (1980) (holding that town zoning regulations prohibiting the extension of nonconforming uses prevented issuance of a variance to extend trailers to an additional area of the property and increase the number of trailers on the site); *Gillotti v. Food Fair Stores of Connecticut, Inc.*, 148 Conn. 412, 171 A.2d 415 (1961) (finding that the demolition of a building and construction of a larger building constituted an illegal expansion of a nonconforming use). Though the question of whether the Board members violated Wiltzius' substantive due process is an extremely close one, the Board's discretion concerning nonconforming uses was sufficiently circumscribed such that this court cannot conclude that Wiltzius would be unable to prove a set of facts entitling him to relief for a federal substantive due process violation.

■■■ Because this court finds that the Board members did engage in illegal conduct according to the allegations in the Complaint, it must next determine whether the Board members actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). As discussed below, this court is unable to discern any basis for concluding that Wiltzius' substantive due process claim is clearly established.

■■■ The central issue at this stage in the qualified immunity analysis is whether the officials in question were on notice that their actions violated the constitutional right claimed by the plaintiff. *See Hope*, 536 U.S. at 739, 122 S.Ct. 2508.

Factors this court must consider in addressing this issue are: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit courts support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *McEvoy v. Spencer,* 124 F.3d 92, 97 (1997). For our purposes, it is also essential to recognize the central teaching of *Hope,* "that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope,* 536 U.S. at 741, 122 S.Ct. 2508.

In *Gagliardi,* the Second Circuit noted that claims like that of Wiltzius—where a property owner asserts a property interest in the proper enforcement of zoning regulations with respect to another's property—are "rather unique, since most due process challenges to land use regulations involve a property owner who has been denied a building permit or a site plan or has some other restriction placed *on his own property." Gagliardi,* 18 F.3d at 191–92 (citing *Brady v. Town of Colchester,* 863 F.2d 205, 207–08 (2d Cir.1988)) (emphasis added); *see also Southview Assocs.,* 980 F.2d 84 (2d Cir.1992). Wiltzius cites no federal cases for the proposition that an adjoining property owner has a substantive due process right for action taken by zoning officials in violation of local zoning regulations. At oral argument, his attorney cited the court to *Walz v. Smithtown,* 46 F.3d 162 (2d Cir.1995). In *Walz,* however, the plaintiffs' injury stemmed from a town official arbitrarily denying the plaintiffs an evacuation permit for their own property. *Id.* at 168.

While this court does not dispute Wiltzius' claim that the extension or enlargement of nonconforming structures is clearly prohibited under state law, there is no Circuit or Supreme Court precedent that would place Board members on notice that their actions, in granting such an extension or enlargement, would violate an adjoining property owners substantive due process rights. Thus, the court grants the individual Board members qualified immunity for Wiltzius' substantive due process claims.

## C. Substantive Due Process

The only remaining federal claim that Wiltzius can pursue is the substantive due process claim against the Town of New Milford contained in Count Thirteen of the Amended Complaint. Here, Wiltzius alleges that the Town of Milford violated or caused a violation of his rights by its failure to promulgate and enforce health and safety guidelines, local zoning procedures, and state zoning law. Wiltzius further claims that the Town failed to adequately screen, retain, supervise and/or train its zoning officials and employees. The Town responds that it cannot be held liable for the actions of the Board, and, even if it can, the allegations of the complaint are not sufficiently outrageous to sustain a substantive due process allegation. The court rejects both arguments urged by the Town.

1. *The Town of New Milford's Liability for the Actions of Its Zoning Board of Appeals.*

██ The Town's first ground for dismissing the substantive due process claim against it is that Wiltzius cannot show that his constitutional rights were violated by an official practice or policy of the Town. Relying on the Supreme Court's landmark decision in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Town essentially maintains that it cannot be held accountable for the actions of the Board

under a theory of *respondeat superior.*
*Id.* at 694, 98 S.Ct. 2018. Given that the
Complaint does not allege that the alleged-
ly illegal expansion of the nonconforming
trailers was done pursuant to municipal
policy, the Town's argument necessarily
rests on the notion that the Board's zoning
decisions do not constitute official town
policy. *See Pembaur v. City of Cincinna-
ti,* 475 U.S. 469, 479, 481, 106 S.Ct. 1292,
89 L.Ed.2d 452 (1986) ("[W]here action is
directed by those who establish govern-
mental policy, the municipality is equally
responsible whether that action is to be
taken only once or to be taken repeated-
ly."). In response to this argument, Wilt-
zius claims that the Board is an official
policymaker when it exercises its authority
on land use regulation.

Under *Pembaur,* official policy may be
established by legislative enactments or by
municipal boards to whom government of-
ficials have delegated the requisite authori-
ty. *Pembaur,* 475 U.S. at 483, 106 S.Ct.
1292. In either event, courts must look to
state law to answer the question of wheth-
er an official or municipal body possesses
final policymaking authority.

*See id.; see also Jett v. Dallas Indepen-
dent Sch. Dist.,* 491 U.S. 701, 109 S.Ct.
2702, 105 L.Ed.2d 598 (1989). Generally
speaking, federal courts have concluded
that zoning board members are official
policy makers. *See, e.g., Rodrigues v. Vil-
lage of Larchmont,* 608 F.Supp. 467, 476
(S.D.N.Y.1985) ("Thus [Zoning] Board
members are those officers described by
*[Monell]* whose joint edicts or acts may
fairly be said to represent official policy.");
*Shelton v. City of College Station,* 754 F.2d
1251 (5th Cir.1985) ("[T]he [city] lawmak-
ers have delegated policy-making authority
with regard to the grant or denial of zon-
ing variances. Accordingly, the city is lia-
ble for injury caused by unconstitutional
acts of its agent, the Board."); *Dubuc v.*

*Green Oak Twp.,* 810 F.Supp. 867, 874
(E.D.Mich.1992) ("Because the Green Oak
Township Zoning Board of Appeals has the
authority to make zoning policy, plaintiff's
claim under [§ 1983] is properly brought
against defendant Green Oak Township.").
In Connecticut, it appears that state law
considers zoning boards of appeal to be the
final decision makers with respect to
granting variances and exceptions to zon-
ing regulations. Conn. Gen.Stat. § 8–
6(a)(3) (stating the zoning board of appeals
shall have the power "to determine and
vary the application of the zoning bylaws,
ordinances or regulations in harmony with
their general purpose and intent."); cf.
*Cumberland Farms v. Town of Groton,*
247 Conn. 196, 204, 719 A.2d 465 (1998)
(holding that, in the context of determining
ripeness for a state takings claim, "a final
decision by the 'initial decision maker[ ]'
really means a decision by the zoning
board of appeals, when that body … is
exercising its power to grant variances and
exceptions."). Therefore, Wiltzius proper-
ly brings a *Monell* claim against the Town,
and the Town's Motion to Dismiss on this
issue is denied.

### 2. *The legal sufficiency of Wiltzius' substantive due process claims.*

■ Next, the Town attempts to argue
that, as pled, the Board's alleged actions
do not rise to the level of a violation of
substantive due process. According to
Wiltzius, however, the Complaint's allega-
tions that, *inter alia,* the Board members
allowed the enlargement of existing trail-
ers knowing that said trailers posed a lita-
ny of health and safety threats satisfies
federal pleading requirements for substan-
tive due process claims. This court
agrees.

■ The parties agree that a plain-
tiff cannot maintain an a cause of action
under substantive due process unless the

governmental action in question is so arbitrary and outrageous as to "shock the conscience" of ordinary citizens. *County of Sacramento v. Lewis,* 523 U.S. 833, 846–47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). As the Second Circuit has enunciated, "[s]ubstantive due process is an outer limit on the legitimacy of governmental actions." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999). Put differently, substantive due process is meant to protect citizens from the most objectionable forms of arbitrary governmental actions. *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708.

It may ultimately be the case that Wiltzius will fail to adduce sufficient evidence to support his substantive due process claim and will have to face the consequences of such failure at summary judgment or trial. At this point, though, the court is unable to conclude beyond doubt that Wiltzius could prove no set of facts under his Amended Complaint that would entitle him to relief for violations of his substantive due process rights by the Town.

### D. Legislative Immunity for Claims of Monetary Damages

The Board members also assert that they are entitled to legislative immunity for all the claims alleged in the Amended Complaint, including state law claims, under *Bogan v. Scott–Harris,* 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). Even if this court assumed that the Board acted in its legislative capacity when it granted the permits and variances in question, *Bogan,* by its own terms, only applies to claims brought under section 1983. *Id.* ("Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities."). This court has already addressed Wiltzius' section 1983 claims against the Board members. Rul-

ing, *supra* at 8–22. Further, the court knows of no authority permitting federal law to establish absolute immunity for claims brought under state law in cases such as this.

### E. Board Member Immunity Under State Law

 Addressing the state and common law claims in the Amended Complaint for Misrepresentation (Count Nine), Private Nuisance (Count Ten), Negligence (Count 11), and Private Nuisance (Count Twelve) against the individual defendants, the defendants argue that the Board members and Castagnetta are entitled to immunity under Conn. Gen.Stat. § 52–557n (b)(7). That section states as follows:

Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from ... (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety.

Relying on this provision, the defendants assert that Wiltzius' claim is devoid of any suggestion that the defendants acted with reckless disregard for health or safety when exercising their discretionary duties.

The defendants' argument fails because Wiltzius asserts numerous allegations in the Amended Complaint that Board members knew, or should have known, about the considerable water and sewage damage being done to Wiltzius' property as a

result of construction in the Park and still allowed the project to continue. *See* Amend. Compl. at ¶¶ 47–51 (Doc. No. 61). These allegations are sufficient, when taken as true, to establish a claim that the Board acted with reckless disregard for health or safety in approving variances for trailers in the Park. Thus, this court finds that Conn. Gen.Stat. § 52–557n (b)(7) cannot avail the individual defendants.

### F. Private Nuisance

██ Count Ten of Wiltzius' complaint alleges that the individual defendants created and maintained a private nuisance through their actions relating to the Park. The defendants counter that, because Wiltzius has not adequately alleged that they were the proximate cause of his injuries, the claim fails as a matter of law. *See Pestey v. Cushman*, 259 Conn. 345, 361, 788 A.2d 496 (2003).

Reviewing Wiltzius' Amended Complaint, there is no basis for the defendants' challenge. In every section of Wiltzius' private nuisance claim, he clearly alleges that the individuals defendants' conduct in allowing Garden Homes and/or Sixth Garden to expand, enlarge, and perpetuate a nonconforming structure caused his injuries. *See* Amend. Compl. at ¶ 116. That Wiltzius does not attach the word "proximate" to these charges is a technicality that does not warrant the dismissal of his claim. The court cannot say beyond doubt that Wiltzius could not prove a set of facts under these pleadings that would entitle him to relief.

### G. Public Nuisance

██ Count Twelve of Wiltzius' Amended Complaint sounds in public nuisance against the individual defendants. Connecticut law establishes that "a public nuisance exists if: (1) the condition complained of has a natural tendency to create danger and inflict injury upon person or property; (2) the danger created is a continuing one; (3) the use of the land is unreasonable or unlawful; and (4) the condition or conduct complained of interferes with a right common to the general public." *Keeney v. Old Saybrook*, 237 Conn. 135, 162, 676 A.2d 795 (1996).

As to this claim, the individual defendants argue that Wiltzius has not pled proximate cause, general injury to the public, or that the defendants intended to bring about the conditions alleged to be a nuisance. The court rejects all three of these challenges. For one, Wiltzius more than adequately pleads proximate cause in his public nuisance count. *See* Amend. Compl. at ¶¶ 116, 119–122, 123. Second, the plain language of Wiltzius' Amended Complaint clearly includes allegations that the defendants' actions caused harm to the general public's common right to health and safety. *See, e.g.* Amend. Compl. at ¶ 123(f). The defendants do not attempt to claim that these are not rights common to the public, and the court sees no reason to conclude otherwise.

██ As to the defendants' third challenge, it is true that Wiltzius does not allege that the defendants intended the conditions alleged to be a nuisance. Connecticut law, however, does not require Wiltzius to establish this level of intent to sustain his public nuisance count. The defendants mistakenly cite to *State v. Tippetts–Abbett–McCarthy–Stratton*, 204 Conn. 177, 527 A.2d 688 (1987), for the proposition that a public nuisance does not lie unless "the creator of the public nuisance intended to bring about the conditions which are in fact found to be a nuisance." *Id.* at 183, 527 A.2d 688 (citations omitted). A review of Connecticut nuisance law reveals that this intent requirement only applies to *intentional* public nuisances. *Id.; see also Keeney*, 237

Conn. at 163, 676 A.2d 795 (distinguishing the requirements for intentionally and negligently created nuisances). Everything about Wiltzius' submissions suggest that he is alleging a negligently created nuisance, rather than an intentionally created one. For instance, in his public nuisance claim, Wiltzius incorporates by reference his allegations in Count Eleven that the Board acted negligently in enlarging nonconforming structures. Amend. Compl. at ¶ 1–122, ¶¶ 119–122. Thus, a fair reading of Wiltzius' Amended Complaint indicates that Wiltzius is not alleging an intentional nuisance, but, rather, a negligently caused nuisance. As a result, the court must deny the motion to dismiss the public nuisance count.

### H. The Town's Governmental Immunity for Wiltzius' Misrepresentation Claim

The Town asserts that it is not liable for misrepresentation under Count Nine of Wiltzius' complaint under Conn. Gen.Stat. § 52–557n (a)(2)(A). While the court agrees, the defendants' argument is moot because Wiltzius does not assert a claim of Misrepresentation against the Town in Count Nine.

### I. Independent Causes of Action Under Conn. Gen.Stat. ¶ 52–557n

In Count Fifteen, Wiltzius merely states that, pursuant to Conn. Gen.Stat. ¶ 52–557n, the Town is liable to him for the injuries he suffered as a result of the defendants' acts and omissions. The defendants argue that this count should be dismissed because Conn. Gen.Stat. ¶ 52–577n does not actually create an independent cause of action. This court agrees. Section ¶ 52–557n serves only to abrogate Connecticut's sovereign immunity and allow a plaintiff to bring a direct cause of action against a municipality. *Spears v.*

*Garcia,* 263 Conn. 22, 818 A.2d 37 (2003). By its terms, it does nothing to establish substantive grounds upon which a plaintiff can recover for his injuries. Count Fifteen, therefore, is dismissed.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss [Doc. No. 66] is GRANTED with respect to Counts One, Two, Three Four, Five, Six, Seven, Eight, Fourteen and Fifteen, and DENIED with respect to Counts Nine, Ten, Eleven, Twelve and Thirteen. Because this court has already afforded Wiltzius the opportunity to re-plead this action, the court does not grant him the right to re-plead at this time.

**SO ORDERED.**